In re the MARRIAGE of Walter A. GUDEN-KAUF and Hattie Mae Gudenkauf.

Upon the Petition of Walter A. GUDEN-KAUF, Petitioner,

and Concerning Hattie Mae GUDENKAUF, Respondent.

No. 55325.

Supreme Court of Iowa.

Feb. 21, 1973.

Francis J. Pruss, Cedar Rapids, for appellant.

E. Michael Carr, Manchester, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

This is an appeal from an award of alimony. The issues are whether alimony is barred by an antenuptial agreement of the parties and, if not, whether the award is otherwise justified. We affirm and remand.

I. *The antenuptial agreement.* A few days prior to their February 4, 1957, marriage the parties entered an antenuptial agreement which in substance provided neither would acquire any right in the property of the other by virtue of the marriage. Petitioner (Walter) relies upon the following additional language as barring alimony: "This contract limits the right of either party to participate in the estate of the other, whether the marriage relation is determined by death or legal proceedings." The marriage was terminated by dissolution about 13 years later, and the alimony award involved here was made in that proceeding.

The parties assume the agreement would bar alimony unless prevented from doing so by public policy. Without deciding, we will assume that is true.

We are unable to distinguish the relevant provisions of the antenuptial agreement in this case from those held void in Norris v. Norris, 174 N.W.2d 368 (Iowa 1970). There the court observed, "the authorities are in general accord that provisions similar to this one are void as against public policy. [citations]." *Id.* at 369–370. We applied the general rule then and adhere to it now. We hold that provisions of antenuptial agreements which prohibit alimony are contrary to public policy and void.

The rule has two principal bases. One is that such a provision may tend to facilitate or induce dissolution of the marriage. Walter argues it did not have that effect in this marriage. The policy which invalidates antenuptial prohibitions of alimony does not depend upon the result in a given case. It operates *ab initio* to void such provisions in every case.

The other basis for the rule is the principle that the interspousal support obligation is imposed by law and cannot be contracted away. Norris v. Norris, supra, at 370, and citations; Garlock v. Garlock, 279 N. Y. 337, 18 N.E.2d 521 (1939); § 598.21, The Code. The policy involved is that conditions which affect alimony entitlement cannot accurately be foreseen at the time antenuptial agreements are entered, and public interest in enforcement of the legal obligation to support overrides a premarital anticipatory forfeiture of alimony. Reiling v. Reiling, 256 Or. 448, 474 P.2d 327, 328 (1970).

This case illustrates the wisdom of the rule. Respondent (Hattie) was 66 at the time of trial with a life expectancy of more than 12 years. If she did not receive alimony she would leave the marriage with

about $10,000 in savings, $64 monthly social security and no reasonable prospect of employment. She would be at the mercy of the uncertainties and vicissitudes of life. Walter, a 63 year-old farmer at the time of trial, would leave the marriage with a net worth of about $150,000. He had revoked his will leaving Hattie a life estate in his farm.

At trial Hattie estimated her modest monthly needs at $250. She could not reasonably meet them without alimony.

She was entitled to alimony despite the antenuptial agreement.

II. *The award.* Trial court awarded Hattie $21,271.20 as lump sum alimony. The court reasoned that this sum at five percent interest would amortize at $2400.00 a year over her 12 year expectancy. Petitioner attacks the award on three grounds. He asserts it should not have been awarded in a lump sum; that Hattie did not demonstrate her need; and that it is excessive. We do not agree.

Code § 598.21 requires a trial court upon dissolution of marriage to make such order for the maintenance of the parties "as shall be justified." Award of alimony in a lump sum may in some cases be appropriate. See, e. g., Geisinger v. Geisinger, 202 N.W.2d 44 (Iowa 1972); Wilson v. Wilson, 197 N.W.2d 589 (Iowa 1972); Britven v. Britven, 259 Iowa 650, 145 N.W.2d 450 (1966); 24 Am.Jur.2d Divorce and Separation § 615. We believe this is such a case. In weighing Hattie's needs against Walter's resources, and in considering the criteria in Schantz v. Schantz, 163 N.W.2d 398 (Iowa 1968), except the guilty party concept, we find trial court was within its proper discretion in awarding alimony in a lump sum.

We also believe there was ample evidence of Hattie's need. She could not reasonably be expected to live out her expectancy on the meager income otherwise available to her.

Nor do we find the award excessive. Walter's argument is largely based on his theory that he was innocent and Hattie guilty in causing breakdown of the marriage. This contention is answered by In re Marriage of Williams, 199 N.W.2d 339, 345 (Iowa 1972). Such labeling is no longer a relevant factor.

*Williams* similarly answers Walter's complaint that he should have been permitted to amend his petition to allege Hattie was estopped from any award of alimony by fault in causing the marital breakdown.

We find the alimony award was just and equitable.

III. *Attorney fees.* Respondent's attorney has requested allowance of attorney fees for services on appeal. He was awarded $1795.05 for his services at trial. We hold petitioner should be ordered to pay $750 toward respondent's attorney fees incurred in this appeal. Judgment shall be entered accordingly in the trial court.

The case is affirmed and remanded for entry of the attorney fee judgment.

Affirmed and remanded.