Herbert VANDE KOP, Appellant,

v.

Michele McGILL, Administrator of the Estate of Harvey Wichman Hindt, a/k/a Harvey W. Hindt, Deceased, Appellee.

No. 93–587.

Supreme Court of Iowa.

March 29, 1995.

**610**

Michael L. Zenor of Zenor & Carr, Spencer, for appellant.

Maurice B. Nieland and Jeffrey D. Garreans of Rawlings, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, Sioux City, for appellee.

McGIVERIN, Chief Justice.

The question here is whether the district court properly sustained the defendant attorney's motion for summary judgment in a legal malpractice action concerning the provisions of an antenuptial agreement. We agree with the court of appeals and affirm the district court ruling.

*I. Background facts and proceedings.* In 1975, Herbert Vande Kop was planning to be married for the second time. Vande Kop intended to marry Ella Marie Rastede. Because he had substantial assets, Vande Kop sought the professional services of attorney Harvey W. Hindt in order to have an antenuptial agreement drafted. In a brief conversation, Vande Kop informed Hindt that he was to be married and that he desired an antenuptial agreement to be prepared for their signatures prior to that marriage.

The antenuptial agreement drafted by Hindt contained provisions addressing the event of the death of either of the parties to the prospective marriage, and it provided the manner in which each party's property would go to their own children respectively; this document did not address what would occur in the event the marriage ended in divorce. Upon completing the proposed antenuptial agreement, Hindt met with Vande Kop and Ella Marie and went over the provisions of the document, reading them paragraph by paragraph and pausing to see if either party had any questions. Neither Vande Kop nor

Ella Marie made any substantial inquiries regarding the provisions of the agreement, and both persons signed the document.

Soon after, the couple was married. Attorney Hindt died in 1976, and his estate was closed two years later.

In July 1990, after fifteen years of marriage, Ella Marie sued Vande Kop for dissolution of the marriage. In the dissolution decree, Ella Marie was awarded alimony, as well as a property settlement that had the combined value of approximately $100,000. Vande Kop was dissatisfied with the property division, believing that the antenuptial agreement he had requested from Hindt should have protected him from such an outcome.

Based on his belief that Hindt failed to provide the "divorce insurance" that he now says he intended to be included in the antenuptial agreement, plaintiff Vande Kop, in 1991, reopened the estate of the now deceased Hindt in order to initiate the present malpractice action against it. Vande Kop alleged that Hindt had not included in the antenuptial agreement the specific provisions or "divorce insurance" Vande Kop expected, and Hindt was thus negligent in drafting the agreement. Vande Kop also alleged that Hindt was negligent in failing to inform him that the antenuptial agreement would not serve to protect his property interests in the event the marriage ended in divorce.

The district court sustained a motion for summary judgment, see Iowa R.Civ.P. 237, made by the defendant administrator of attorney Hindt's estate on the basis, among other things, that Hindt did not commit legal malpractice in drafting the 1975 antenuptial agreement because the provisions that plaintiff Herbert Vande Kop claims he requested to be included in the antenuptial agreement were, at the time, void as contrary to public policy. Based upon this conclusion, the district court granted summary judgment in favor of defendant Hindt's estate and dismissed the case.

Vande Kop appealed, contending that: (1) his claim generated fact issues based upon defendant decedent's failure to include divorce provisions in the antenuptial agreement covering the plaintiff's second marriage; and (2) the decedent failed to fully advise the plaintiff regarding the agreement.

The court of appeals affirmed the district court's decision. We granted Vande Kop's application for further review.

■ II. *Scope of review.* Summary judgment is proper only when the entire record before the court shows there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Downs v. A & H Constr.,* 481 N.W.2d 520, 522 (Iowa 1992); *Hike v. Hall,* 427 N.W.2d 158, 159 (Iowa 1988). In determining whether the district court appropriately granted summary judgment, we review for errors at law. *See* Iowa R.App.P. 4.

The record in this case consists of the pleadings, motion for summary judgment and resistance thereto, affidavits, depositions, and exhibits. Based upon the foregoing, the district court determined that no genuine issue of material fact existed and thus Hindt's estate was entitled to judgment as a matter of law.

III. *Failure to include divorce provision in antenuptial agreement.* Plaintiff Herbert Vande Kop asserts several reasons the district court erred in granting summary judgment against his claim of legal malpractice by attorney Harvey Hindt.

■ In order to establish a prima facie claim of legal malpractice, plaintiff must produce substantial evidence that shows: (1) the existence of an attorney-client relationship giving rise to a duty; (2) the attorney, either by an act or failure to act, violated or breached that duty; (3) the attorney's breach of duty proximately caused injury to the client; and (4) the client sustained actual injury, loss, or damage. *Schmitz v. Crotty,* 528 N.W.2d 112, 115 (Iowa 1995) (citing *Dessel v. Dessel,* 431 N.W.2d 359, 361 (Iowa 1988)).

The focus of this case is on the second element: breach of duty. An attorney breaches the duty of care owed to a client when the attorney fails to use "such skill, prudence and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the task which [is undertaken]." *Id.* at 115 (citing

*Martinson Mfg. Co. v. Seery,* 351 N.W.2d 772, 775 (Iowa 1984)).

We examine plaintiff's contentions.

A. *Vande Kop's contentions.* Vande Kop contends that Hindt was negligent in drafting the antenuptial agreement due to the fact that no provisions were included in the agreement concerning the situation in which the marriage terminated due to dissolution. Vande Kop claims that his desire in seeking an antenuptial agreement was to receive "divorce insurance."

Vande Kop further asserts that, had the agreement included the provisions he allegedly requested, he is certain Ella Marie would have signed it, and thus the result of the divorce proceeding would have been much more favorable to him. In review of the record, however, there is no indication that Ella Marie would indeed have signed an antenuptial agreement containing divorce provisions. Rather, the record clearly demonstrates that Ella Marie was reluctant to sign an antenuptial agreement and that she finally did so only upon the insistence of Vande Kop. Moreover, Vande Kop testified himself that, had "divorce insurance" been included in the antenuptial agreement, he did not know whether Ella Marie would have signed it or not.

Similarly, the record clearly shows that both Vande Kop and Ella Marie were fully aware of the provisions contained in the antenuptial agreement drafted by Hindt. Both testified that, prior to signing the agreement, they met with Hindt and he read the agreement aloud to them, paragraph by paragraph. Additionally, Ella Marie stated that Hindt paused periodically in order to ask if either individual had any questions. During this reading, there was no discussion regarding what would happen to the couple's assets if the marriage ended in divorce. Thus, Vande Kop knew that no such provisions were contained in the proposed agreement. He made no inquiries on the subject of divorce in the joint conference with attorney Hindt.

B. *The Norris case.* The district court concluded that in 1975, when Hindt drafted the antenuptial agreement, the Iowa law was such that provisions in an antenuptial agreement bearing on alimony and property division would have been void. *See Norris v. Norris,* 174 N.W.2d 368, 369 (Iowa 1970). In *Norris,* the court addressed a petition for separate maintenance filed by the wife. The husband argued that the provisions of their antenuptial agreement prevented her from claiming any right to maintenance or support.

The provisions of the antenuptial agreement in *Norris,* relevant to the present case stated: "neither party shall have the right to claim anything of the other's property under this contract, but the property right of the parties shall stand just as they were before the marriage occurred." *Id.* at 369. The language is important because it seems to encompass exactly the type of provisions Vande Kop states he expected to be included in his antenuptial agreement. In addressing the validity of such language in *Norris,* we held that provisions such as these are contrary to public policy and therefore void. *Id.* We said:

> The reason most frequently given is that the state's interest in preserving the marriage relationship makes any provision which provides for, facilitates or tends to induce a separation or divorce of the parties after marriage contrary to public policy and void.
>
> It is also against public policy to place an innocent party in a position where he or she would be forced to endure conduct which would constitute grounds for divorce because of fear that the commencement of an action for divorce would deprive the person of contracted property rights and means of support.

*Id.* at 370 (citations omitted). We also stated in *Norris,* "[w]e believe the facts here bring this case within the rules announced and hold the provision contained in the antenuptial agreement void as contrary to public policy." *Id.* at 371. The language at issue in *Norris* appeared to apply to alimony as well as to property division, and the provisions were deemed void. Thus, had Hindt included this type of language in the 1975 antenuptial agreement, it would have been void under the then-existing case law.

The rule set out in *Norris* was later reaffirmed in *In re Marriage of Gudenkauf,* 204 N.W.2d 586 (Iowa 1973), an alimony case. In addressing similar issues to those in *Norris,* we stated that "[w]e hold that provisions of antenuptial agreements which prohibit alimony are contrary to public policy and void." *Id.* at 587. Thus, the Iowa case law as of 1975, when the Vande Kop antenuptial agreement was drafted, indicated that antenuptial agreements could not bar or affect awards of alimony or division of property.

Further, no Iowa statutes then allowed consideration of an antenuptial agreement in alimony or property settlement awards in dissolution cases.

■ C. *Iowa Code section 598.21.* Iowa Code section 598.21 provides for orders for disposition and support in dissolution cases; specifically, it addresses alimony, separate maintenance, and property division. Iowa Code § 598.21 (1995). Prior to 1980, however, section 598.21 did not provide for the consideration of an antenuptial agreement in alimony or property division cases. *See* Iowa Code Ann. § 598.21 (West 1981). In 1980, the Iowa Legislature rewrote section 598.21 to include subsections (1)(*l*) and (3)(i). *See* 1980 Iowa Acts ch. 1175, § 3. The newly drafted subsections state that the courts can consider provisions of an antenuptial agreement in deciding alimony issues (subsection 1(*l*)) and property issues (subsection 3(i)). Quite obviously, cases we have decided after the 1980 statutory change can have no bearing upon the law that existed in 1975 regarding antenuptial agreement provisions. Clearly, at the time Vande Kop's antenuptial agreement was drafted, the Iowa Legislature had not yet provided for consideration of antenuptial agreements in determining alimony or property division issues in dissolution cases.

■ D. *Attorney need not foresee future changes in the law in order to avoid malpractice liability.* An attorney need not be clairvoyant and foresee future changes in the law such as those that occurred with the 1980 amendments to Iowa Code section 598.21. *Cf. State v. Ogilvie,* 310 N.W.2d 192, 197 (Iowa 1981) (denying ineffective-assistance-of-counsel claim because allegation of legal neg-

ligence was based on a case that had not yet been decided and was not foreseeable at the time of trial); *Long v. Brewer,* 253 N.W.2d 549, 556 (Iowa 1977) (refusing to impute to counsel such clairvoyance as to foresee *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)).

■ E. *Conclusion.* Under the law existing in Iowa in 1975, it appears that alimony and property division provisions, such as those Vande Kop claims he desired in an antenuptial agreement, would have been void as against public policy. Therefore, we conclude, as did the district court, that Hindt was not negligent in failing to include such provisions.

No genuine issue of fact existed for trial based on defendant decedent's failure to include divorce provisions in the 1975 antenuptial agreement relating to plaintiff's second marriage. No fact issue existed concerning a breach of duty of care by Hindt to plaintiff.

IV. *Vande Kop's claim that Hindt failed to fully advise him.* A second issue Vande Kop asserts is that both the district court and the court of appeals ignored his "failure to inform" claim. He contends that Hindt failed to inform him that the antenuptial agreement, as drafted, did not contain the "divorce insurance" he says he requested.

■ This argument too must fail because Vande Kop failed to preserve error. He did not raise this issue in his resistance to Hindt's motion for summary judgment, nor did he raise it in his affidavit in support of the resistance. *See* Iowa R.Civ.P. 237(h).

Moreover, the district court did not rule on this issue, and Vande Kop failed to file an Iowa Rule of Civil Procedure 179(b) motion requesting a ruling on this issue. Due to the fact the district court did not rule on Vande Kop's present claim for "failure to inform," he was required to move pursuant to rule 179(b) in order to preserve error for appeal. Vande Kop failed to move to amend or enlarge the order, despite the fact the court's summary judgment ruling disposed of the entire case. *See* Iowa R.Civ.P. 237(c) (stating that, if summary judgment is rendered on the entire case, rule 179(b) shall apply).

Since Vande Kop failed to do so, we have nothing to review in this regard. *See West Branch State Bank v. Gates,* 477 N.W.2d 848, 852 (Iowa 1991) (stating that it is well settled that a rule 179(b) motion is essential to preserve error in the event a trial court fails to resolve an issue that was submitted to it for adjudication).

V. *Disposition.* Because we find no reversible error, we affirm the court of appeals decision and the district court judgment. Under our view of the case, we need not address other issues raised by the parties.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**